UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALFRED LAFORD #574687,

    Plaintiff,

v.

HEIDI WASHINGTON, et al.,

    Defendants.

_____/

Case No. 2:22-cv-00193

Hon. Paul L. Maloney
U.S. District Judge

# REPORT AND RECOMMENDATION

## I. Introduction

This Report and Recommendation (R&R) addresses Defendants' motion for summary judgment due to Plaintiff's failure to exhaust his administrative remedies. (ECF No. 34.)

Former Marquette Branch Prison inmate Alfred Laford[1] filed an amended complaint under 42 U.S.C. § 1983 alleging that Defendants violated his Eighth Amendment rights. (ECF No. 12.) Laford says that Defendants failed to protect him from contracting the COVID-19 virus, forced him to work while he was sick, and failed to provide him with medical care and treatment. (*Id.*)

Prior to service of the complaint, the Court issued a screening opinion and order (ECF Nos. 10 and 11) that dismissed Defendants Washington, Huss, James, unknown Central Facility Administrator, unknown Transfer Coordinator, unknown

---

[1] Laford is now confined in a federal prison.

Assistant Deputy Warden of Housing, unknown Assistant Deputy Warden of Custody, and unknown Resident Unit Manager. (*Id.*)

Laford's remaining Eighth Amendment claims are against Defendants Leach, Morgan, Saatio, unknown registered nurse, Negrinelli, McGrath, and Wright. (ECF No. 10, PageID.131.)

Plaintiff's complaint was served on Defendants Leach, Morgan, Negrinelli, Wright, and unknown registered nurse. (ECF No. 31.) Defendants Saatio, and McGrath were not served with a summons and complaint.

Four of these Defendants – Leach, Morgan, Negrinelli and Wright – argue that they should be dismissed from this action because Laford failed to properly exhaust any of the claims he asserted in his amended complaint.

The record before the Court shows that Laford pursued one grievance through MDOC's three step grievance process: grievance MBP 20-11-1668-27B. However, that grievance was rejected at each step because it was not specific to Laford and raised issues concerning the failure to follow policy. More importantly, Laford's complaint raises specific issues that he did not address in grievance MBP 20-11-1668-27B.

The undersigned concludes that Laford failed to properly exhaust a grievance through Step III of the grievance process that raised the issues asserted in his complaint against Defendants Leach, Morgan, Negrinelli and Wright.

For this reason, it is respectfully recommended that this Court grant Defendants Leach, Morgan, Negrinelli and Wright's motion for summary judgment

due to Laford's failure to exhaust his administrative remedies against them. In addition, the record indicates that Laford has not served a summons and complaint on Defendants Saatio and McGrath. Accordingly, it is recommended that the Court dismiss Defendants Saatio and McGrath from this action. Finally, Laford has failed to identify Defendant unknown registered nurse.[2] Accordingly, it is recommended that the Court dismiss Defendant unknown registered nurse.

## II. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[3] or whether it is so one-sided that one

---

[2] Laford's amended complaint states that Defendant unknown registered nurse was responsible for "identifying and treating prisoners with symptoms of COVID-19." (ECF No. 12, PageID.140.) Laford alleges that on October 7, 2020, an unknown registered nurse made rounds in his unit, but he received no treatment after he told unknown registered nurse that he had COVID-19 symptoms. (*Id.*, PageID.146.)

[3] The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). If the factual disputes about exhaustion do not overlap with the merits of the plaintiff's substantive claims, then the court may conduct a bench trial to resolve the exhaustion issue. *Richards v. Perttu*, No. 22-1298, 2024 WL 1172634, at *8 (6th Cir. Mar. 19, 2024). In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Willey*, 789 F.3d at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence.").

party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions

under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal

5

review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

6

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id*. at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance

procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[4]

### IV. Plaintiff's Allegations

Liberally construing Plaintiff's allegations, it appears that he has raised the following potential Eighth Amendment claims against the remaining Defendants:

---

[4] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

| Number | Claim | Defendant | Date or Date Range of Incident(s) |
|---|---|---|---|
| 1 | Laford says that when he first started to experience COVID symptoms, health care was not contacted, and he had to work in the library because he did not have an elevated temperature. (ECF No. 12, PageID.145.) | Saatio | October 2, 2020 |
| 2 | Refused treatment after Laford informed nurse that he had COVID symptoms. (*Id.*, PageID.146.) | Unknown registered nurse | October 7, 2020 |
| 3 | Despite being sick and identified as "likely COVID positive", he was told he had to work as a unit porter and if he refused, he would go to administrative segregation. Laford says that he was refused access to his breathing machine despite being close to death. (*Id.*, PageID.147.) | Morgan | October 10-14, 2020 |
| 4 | After he tested positive for COVID on October 8, he was hospitalized on October 14, and his discharge instructions stated to stay in isolation, but he returned to the same cell at the Marquette Branch Prison. (*Id.*, PageID.148.) | unknown | October 19. 2020. |
| 5 | Laford says that he was still sick, short of breath, and needed access to his breathing machine but he was told to "work on D block or in segregation you shall dwell." (*Id.*, PageID.149-150.) | Sattio, McGrath, and Leach | October 27, 2020 |

9

| Number | Claim | Defendant | Date or Date Range of Incident(s) |
|---|---|---|---|
| 6 | Reported symptoms of "tachycardia, shortness of breath, and thought his pneumonia had returned" no action was taken. Negrinelli allegedly stated "if I treat you, we'll have to take everybody to the hospital." Plaintiff concedes that he was taken to the hospital that day but says that he has permanent injuries. (*Id.*, PageID.150-151.) | Neginelli and Wright | October 27, 2020 |

**IV. Analysis**

**1. Exhaustion of Grievance Remedies**

Defendants argue that Laford never properly exhausted his administrative remedies. Laford says that he did exhaust by attempting to file one grievance that was never responded to, and then by filing grievance MBP 20-11-1668-27B.

The records before the Court show that Grievance MBP 20-11-1668-27B was rejected at each Step of the grievance process. Laford's Step I grievance is shown below.

10



(ECF No. 35-3, PageID.259.)

Laford's Step I grievance was rejected because he was grieving an issue that "is not specific to you but rather the prison population as a whole." (*Id.*) The rejection was upheld at Step II and Step III. (*Id.*, PageID.257-258.)

Laford's Step I grievance says essentially that prison staff at Marquette Branch Prison failed to follow MDOC policy and procedure to prevent the spread of

COVID-19 in the prison, and that he contracted the virus and was hospitalized twice. (*Id.*, PageID.259.)

This grievance fails to address the specific claims against Leach, Morgan, Negrinelli or Wright. First, Laford did not name these defendants in his Step I grievance. Laford argues that he placed Defendants on notice by naming "MBP staff." However, naming the specific individuals grieved is a requirement of MDOC policy. (*See* ECF No. 35-2, PageID.248 (MDOC Policy Directive 03.02.130 ¶ S (stating that "Dates, times, places, **and names of all those involved in the issue being grieved** are to be included") (emphasis added).) While the MDOC may waive that requirement by considering the grievance on the merits at all three Steps of the grievance process, that requirement was not waived because the grievance was rejected for not being specific to Laford "but rather the prison population as a whole." (ECF No. 35-3, PageID.259.)

Second, in his Step I grievance, Laford asserted an incident date of October 23, 2020. But none of the issues that he asserted in his complaint arose on that date. The incidents asserted by Laford in his complaint against Defendants allegedly arose before or after the incident date in his grievance.

Third, the allegations asserted by Laford in his complaint involving being forced to work while sick and denial of medical care and treatment. These issues were never grieved.

Ultimately, Laford failed to properly grieve any specific claim that he asserted in his complaint, such that the MDOC was put on notice of those claims.

The undersigned concludes that Laford never attempted to raise the specific issues he asserted in his complaint in a grievance exhausted through Step III of the grievance process. (ECF No. 35-3, PageID.256 (Step III Grievance Report); PageID.254-255 (Affidavit of Departmental Analyst Nelson).)[5] Laford could have raised the issues asserted in his complaint in a Step I grievance. For example, Laford could have asserted that Defendants Leach and Morgan forced him to work while sick and threatened him with administrative segregation if he refused to work. Laford could have asserted that he was denied medical care by Defendants Negrinelli and Wright. But Laford failed to grieve those issues against Defendants. In the opinion of the undersigned, Laford failed to properly exhaust his claims against Defendants Leach, Morgan, Negrinelli and Wright.[6]

### 2. Service of the Complaint

Defendants Saatio and McGrath were not served with a summons and complaint. Laford was required to serve a summons and complaint on each

---

[5] Although Laford says that he filed a grievance on October 23, 2020, naming Saatio, McGrath, and Morgan, and that he filed a Step II grievance after he did not receive a Step I response, Laford does not allege that he filed a Step III grievance (ECF No. 41, PageID.274-275). Notably, however, this allegation shows that not only did Laford know the names of some Defendants before he filed grievance MBP 20-11-1668-27B on October 30, 2020, but that he understood the MDOC requirement to name the individuals he intended to grieve.

[6] Laford asserted in his complaint that Defendants Saatio, McGrath, and Morgan walked between B and C units without wearing appropriate PPE and stated: "I don't care if prisoners die of COVID." (ECF No. 12, PageID.144-145.) Laford does not allege that these Defendants were sick and spread the COVID virus to the prison population. These allegations tend to reflect Defendants' attitudes about COVID-19 in the prison, but in the opinion of the undersigned, these allegations are not independent claims.

Defendant because he was not proceeding *in forma pauperis*. (ECF No. 30.) The docket sheet shows that Laford served a summons and complaint on Defendants Leach, Morgan, Negrinelli and Wright, and also unknown Registered Nurse. (ECF No. 31.) No other Defendants were served with a summons and complaint.

In the opinion of the undersigned, Defendants Saatio and McGrath should be dismissed without prejudice under Fed. R. Civ. P. 4(m). Rule 4(m) provides that the Court must, after providing plaintiff with notice, either dismiss or order service within a specified time frame against a Defendant who has not been served within 90 days after the complaint was filed.

Interestingly, it appears that someone from the Marquette Branch Prison signed for the summons and complaint for Defendant unknown registered nurse:

[Image of USPS PS Form 3811 Domestic Return Receipt, addressed to "Unknown Party, Registered Nurse, Marquette Branch Prison, 1960 U.S. HWY 41 South, Marquette, MI 49855", signed with date of delivery 4-29-2024, Certified Mail Restricted Delivery checked, Article Number 9589 0710 5270 2025 6127 60]

14

(ECF No. 31, PageID.208.)   No one has been identified as the "unknown registered nurse."  Therefore, it is recommended that the Court dismiss Defendant "unknown registered nurse" from this action if Laford cannot identify the individual allegedly served during the time for objections to this R&R.

## V.  Recommendation

The undersigned respectfully recommends that this Court grant Defendants Leach, Morgan, Negrinelli and Wright's motion for summary judgment due to Laford's failure to exhaust his administrative remedies against them and dismiss the complaint against them without prejudice.

It is further recommended that the Court dismiss unserved Defendants Saatio and McGrath without prejudice.

Finally, it is recommended that the Court dismiss unknown registered nurse without prejudice, if Laford fails to identify that Defendant.

If the Court accepts this recommendation, the case will be dismissed.


Dated:  August 16, 2024                                  /s/ *Maarten Vermaat*
                                                                          MAARTEN VERMAAT
                                                                          U. S. MAGISTRATE JUDGE


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).